UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CARLOS F.,[1]

        Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:22-cv-00266 (JJM)

        This is an action brought pursuant to 42 U.S.C. §§405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to Supplemental Security Income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [7, 9].[2] The parties have consented to my jurisdiction [10]. Having reviewed the parties' submissions [7, 9], the Commissioner's motion is granted, and plaintiff's motion is denied.

**BACKGROUND**

        The parties' familiarity with the 715-page administrative record [4] is presumed. In December 2017, plaintiff filed an application for SSI alleging disability beginning January 1, 2016. Administrative Record [4] at 15. Plaintiff alleged disability due to high blood pressure,

---

[1] In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2] Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination

cervical fusion surgery, neck and back pain, and gout. Id. at 311. After the application was denied, an administrative hearing was conducted before Administrative Law Judge ("ALJ") Susan Smith on November 2, 2020, at which plaintiff, who appeared with an attorney, and vocational expert Corinne Porter testified. Id. at 33-65 (transcript of hearing).

Ms. Porter categorized plaintiff's prior work as a "[h]andyman" position under the Dictionary of Occupational Titles, which is medium work pursuant to the DOT. Id. at 60. She testified that an individual with plaintiff's residual functional capacity ("RFC") could perform the light work jobs of cleaner, marking clerk, and bagger. Id. at 61.

Based upon the medical evidence and testimony, ALJ Smith found that plaintiff's severe impairments were "degenerative disc disease of the cervical and lumbar spine, status post cervical fusion surgery, and gout". Id. at 17. In order to determine plaintiff's RFC, ALJ Smith considered functional assessments in the record from consultative examiner Trevor Litchmore, M.D. and state agency medical consultant D. Brauer, M.D.[3] After conducting a physical examination, Dr. Litchmore concluded:

> "On the basis of the physical exam, the claimant will have limitation as it relates to activities that require moderate to marked physical exertion in the context of the gouty arthritis. The claimant will also have moderate limitation as it relates to lifting and carrying heavy objects in the context of his chronic neck pain."

Id. at 468.

After conducting a review of the medical evidence in the file, including Dr. Litchmore's report, Dr. Brauer determined the plaintiff could occasionally lift and/or carry up to 50 pounds and frequently lift and/or carry 25 pounds. Id. at 71. He opined that plaintiff could sit, stand, or walk about 6 hours out of an 8-hour work day with normal breaks. Id.

---

[3]   Dr. Brauer's first name does not appear in the record.

ALJ Smith also considered the January 5, 2018 treatment note from plaintiff's treating nurse practitioner, Meggan Shea, in which she states that she "[d]iscussed [with plaintiff the] benefit of career change to a less physical profession". Id. at 382. Finally, she considered plaintiff's treatment records, imaging reports, and testimony. Id. at 19-25.

Based upon the evidence in the file, ALJ Smith concluded that plaintiff had the RFC to perform light work, with several modifications. She found Dr. Brauer's opinion that plaintiff could perform medium work to be "unpersuasive" because "the diagnostic imaging of the spine does provide some basis for some chronic pain and limitation even if the gout flare-ups are largely absent or occur with gaps of up to a year during the period at issue" and because "the frequency of the primary care visits also support at least some degree of pain and limitation". Id. at 25.

Interpreting Dr. Litchmore's opinion to assess "moderate to marked limitations" (id. at 20),[4] ALJ Smith concluded that the findings upon examination, plaintiff's reported daily activities, and his continuing work activity "seem to rebut [his] opinion insofar as it concerns marked limitations, if not the moderate limitations." Id. at 20. She found further that "the treating record" following Dr. Litchmore's exam was "not consistent with marked limitations". Id. In addition to finding the examination inconsistent with a marked limitation, she concluded that Dr. Litchmore's opinion was "also not persuasive as it is not expressed in vocationally relevant terms and insofar as the opinion might be reasonably interpreted as supporting less than light exertion, it is not supported by objective findings". Id. at 21.

---

[4] ALJ Smith stated that Dr. Litchmore opined that plaintiff had "moderate to marked limitations". Id. at 20. However, Dr. Litchmore's report states that plaintiff "will have a limitation as it relates to activities that require moderate to marked physical exertion" and a "moderate limitation as it relates to lifting and carrying heavy objects". Id. at 468.

ALJ Smith also incorporated into her opinion five pages of analysis of plaintiff's treatment records. See id. at 20-25. After summarizing plaintiff's treatment and the medical findings from January 2018 through October 2020, she concluded:

> "The record described above shows a pattern of episodic worsening of reported subjective pain levels, despite no significant changes in objective examination (or particularly significant objective findings, or primary care findings that do not correspond with spine specialist physician examination); diagnostic imaging that showed no central canal stenosis; improvements despite the same treatment regimen, or even the cessation of some of that treatment regimen; what appears to be less than timely pursuit of multiple offers for greater evaluation and treatment; and a much less significant gout flare-up frequency than alleged in testimony. For all these reasons, the undersigned finds the claimant's statements about the intensity, persistence, and limiting effects of his symptoms to be inconsistent with the record."

Id. at 25. She found that "the suggested opinion from the primary care provider that the claimant should look for less strenuous work than his current construction type work, is persuasive and consistent with a reduction to light exertion." Id.

Based upon the RFC and the vocational expert's testimony, ALJ Smith determined that plaintiff was able to perform jobs that exist in significant numbers in the national economy, and therefore was not disabled since the date he filed his application. Id. at 26. The Appeals Council found no basis to change ALJ Smith's decision. Id. at 1-4. Thereafter, this action ensued.

## DISCUSSION

**A.      Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42

U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that ALJ Smith "*effectively* reject[ed] all medical opinions regarding Plaintiff's physical limitations and then interpret[ed] the raw, objective, diagnostic, and clinical data to formulate the RFC determination". Plaintiff's Memorandum of Law [7-1] at 19. He argues that if one interprets his treating nurse practitioner's statement[5], which ALJ Smith found persuasive, to mean that plaintiff should find "a sedentary or less exertional job, presumably on a very limited part-time basis", "a determination of disability would have followed as of Plaintiff's 50th birthday, based on the Medical-Vocational Guidelines (or Grid Rules), Rule 201.10". Id. at 20. Plaintiff urges remand:

> "[T]he ALJ declined to adopt any of the medical opinions of record, and instead ch[o]se a light RFC which falls in the middle ground between the medium RFC opinions of Dr. Brauer and the opinion she perceived as more restrictive, from CE Litchmore. The ALJ cannot merely pick an RFC finding in the middle ground between two medical opinions, as this amounts to the ALJ filling a gap in the record with her own interpretation of the raw medical data . . . This again is legal error requiring remand."

Id. at 25.

---

[5] Plaintiff attributes this statement to Dr. Calabrese, however, the treatment note in which this statement appears is signed by nurse practitioner Meggan Shea. Administrative Record [4] at 384.

The Commissioner responds that ALJ Smith relied upon evidence throughout the record to make her findings, including the medical evidence, evidence of functional abilities, plaintiff's testimony, and clinical findings on examination. Commissioner's Brief [9-1] at 10-13. This evidence, including the opinion of Dr. Brauer, are "clear substantial evidence [that] supports the ALJ RFC assessment". Id. at 12. Finally, the Commissioner argues that plaintiff failed to meet his "ultimate burden of proving that [he] was disabled throughout the period for which benefits are sought". Id. at 14. For the following reasons, I agree with the Commissioner.

**B.     ALJ Smith's RFC is Supported by Substantial Evidence**

An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (Summary Order). Although an ALJ "may not substitute his own lay opinion for those of medical experts", he or she "is free to choose between properly submitted medical opinions". Mowry v. Commissioner of Social Security, 2019 WL 4643595, *3 (W.D.N.Y. 2019).

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". Matta, 508 F. App'x at 56. See also Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination"). "The question is, instead, whether the ALJ's conclusion was 'supported by the record as a whole.'" Nieves v. Commissioner of Social Security, 2019 WL 4565112, *4 (S.D.N.Y. 2019) (quoting Tricarico v. Colvin, 681 F. App'x 98, 101 (2d Cir. 2017) (Summary Order)). See also Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017) ("[i]t is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to

weigh all the evidence and adopt the limitations supported by the evidence"). An ALJ is entitled to rely upon the opinions of both examining and non-examining state agency medical consultants, so long as those opinions are "consistent with the rest of the evidence in the medical record". Mordean L. v. Commissioner, 2020 WL 6886557, *3 (W.D.N.Y. 2020).

The RFC is not without the support of any medical opinion. ALJ Smith's rejection of Dr. Bauer's opinion that plaintiff can do medium work does not mean that his opinion is without evidentiary value. Such an opinion is evidence that a plaintiff can also do light work. See 20 C.F.R. § 416.967(c) ("If someone can do medium work, we determine that he or she can also do sedentary and light work").

Further, there is other evidence in the record that supports the RFC. ALJ Smith's RFC for light work gives the plaintiff the benefit of the doubt and appears to credit some of the plaintiff's testimony concerning his ability to lift an amount of weight consistent with medium work (*i.e.* up to 50 pounds). This was not an error. See Ramsey v. Commissioner of Social Security, 830 F. App'x 37, 39 (2d Cir. 2020) (Summary Order) (finding no error where the ALJ "occasionally deviated from consultative examiners' recommendations to *decrease* Ramsey's RFC based on other evidence in the record" (emphasis in original)); Deborah Elaine L. v. Commissioner of Social Security, 2022 WL 2662974, *4 (W.D.N.Y. 2022) ("[i]t . . . was not error for the ALJ to afford Plaintiff the benefit of the doubt and assess additional non-exertional limitations despite the lack of support for such limitations in the medical evidence of record. The additional non-exertional limitations assessed by the ALJ are related to Plaintiff's own testimony").

Although ALJ Smith's analysis might have been stated with more clarity, her decision, read as a whole, satisfies her obligation "to construct an accurate and logical bridge

between [her] recitation of the facts and the conclusions [she] reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020) (internal quotation omitted). For example, Dr. Brauer found that plaintiff is able to "occasionally" lift or carry 50 pounds and "frequently" lift or carry 25 pounds. Administrative Record [4] at 71. Plaintiff testified that he was capable of lifting 50 or 60 pounds, but that he "can't do that often" due to pain. Id. at 47. He is capable of lifting a gallon of milk, which weighs about ten pounds, and a 12-pack of bottled water. Id. at 52-53. Pursuant to the regulations,"[m]edium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds", and "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds". 20 CFR 404.1567(b), (c) and 416.967(b), (c). Instead of finding plaintiff capable of medium work, ALJ Smith found that light work was more appropriate, given that the "diagnostic imaging of the spine does provide some basis for some chronic pain and limitation" and because "the frequency of the primary care visits also support at least some degree of pain and limitation". Administrative Record [4] at 25. Notwithstanding the lack of a medical opinion specifically stating that claimant should be limited to light work, ALJ Smith's finding that plaintiff can do light work, which requires lifting no more than 20 pounds at a time with frequent lifting or carrying up to 10 pounds, is supported by Dr. Brauer's opinion, the plaintiff's testimony, the diagnostic imaging, and the plaintiff's treatment notes. Although not argued by the parties, ALJ Smith's opinion is also consistent with Dr. Litchmore's opinion.

    Plaintiff identifies no medical record to support his assertion that he should be limited to sedentary work. In fact, he concedes that his nurse practitioner's statement that she "[d]iscussed benefit of career change to a less physical profession" is "vague" and "clearly not

expressed in vocationally relevant terms". Plaintiff's Memorandum of Law [7-1] at 20. He posits, however, that "[i]f, for instance, Dr. Calabrese was familiar with Plaintiff's handyman work as Plaintiff described it, under oath, at his hearing, his statement would mean finding a sedentary or less exertional job, presumably on a very limited part-time basis". Id. Such an understanding seems unlikely given the other statement in that treatment note that plaintiff "[c]ontinues to work in [the] construction field, but feels physical work is taking [its] toll on his body & he has increased neck and back pain. Considering decreasing his hours or changing jobs." Id. at 381. This description of plaintiff's work does not appear to reflect plaintiff's testimony that he works only two to three hours at a time and that his work consists primarily of taking measurements, and consulting on layout and design. Id. at 46, 49-50.

In any event, "[c]onjecture is not evidence." Pettus v. TRW Consumer Credit Service, 879 F. Supp. 695, 698 (W.D. Tex. 1994). "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020). I agree with the Commissioner that plaintiff failed to do that here. See Commissioner's Brief [9-1] at 14. Aside from the "vague" statement of the nurse practitioner concerning "less physical" work, plaintiff points to no other medical evidence to support his assertion that he is functionally capable of only sedentary work. See Plaintiff's Memorandum of Law [7-1] at 15-26.

I also find that ALJ Smith was not required to further develop the record. Medical records do not appear to be missing, and the ALJ had the benefit of a complete and legible treatment record. Lowry o/b/o J.B. v. Astrue, 474 F. App'x 801, 804 (2d Cir. 2012) ("where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional

information in advance of rejecting a benefits claim"); *compare* <u>Pratts v. Chater</u>, 94 F.3d 34 (2d Cir. 1996) ("[m]uch of Pratt's medical history is missing . . . the medical records that do appear in the record are frequently incomplete or illegible and provide no coherent overview of Pratt's treatment"). The record contained the opinions of the state agency physician and a consultative examiner, a statement from a treating provider that plaintiff could still work, and over two years of treatment records and notes.

The RFC is supported by Dr. Brauer's opinion and other evidence in the record, which ALJ Smith summarized and analyzed at some length. I find that her conclusions concerning plaintiff's RFC are supported by substantial evidence. That is, a "reasonable mind might accept" ALJ Smith's reasoning "as adequate to support her conclusion". <u>Consolidated Edison Co.</u>, 305 U.S. at 229.

## CONCLUSION

For these reasons, the Commissioner's motion for judgment on the pleadings [9] is granted, and plaintiff's motion [7] is denied.

**SO ORDERED**.

Dated: September 22, 2022

/s/ _____
JEREMIAH J. MCCARTHY
United States Magistrate Judge